SO ORDERED: July 10, 2012.



Anthony J. Metz III
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| GEORGE F. EVANS ) | CASE NO. 11-12376-AJM-13 |
| ) | |
| Debtor ) | |
| ) | |

**ORDER SUSTAINING DEBTOR'S OBJECTION TO CLAIM #12**

This matter came before the Court on March 13, 2012 upon the Debtor's objection to Claim #12 filed by the Estate of Peggy L. Evans ("Peggy"). [1] The Court took ruling on the matter under advisement and ordered the parties to file post hearing briefs by May 14th. The Debtor has filed his brief but Peggy has filed a motion for summary judgment and a supporting memorandum in a related adversary proceeding instead of a brief in the chapter 13 case. The contested issues in the chapter 13 case

---

[1] Also before the Court is Peggy's objection to confirmation of the Debtor's chapter 13 plan. An order overruling that objection has been entered separately.

1

and the related adversary proceeding overlap and therefore the Court will address all of these issues.

## Background

The Debtor and Peggy were married. Their marriage was dissolved by decree entered by the Clinton Country Circuit Court (the "State Court"). On March 13, 2007, the State Court entered an Amended Dissolution Decree (the "Amended Decree") which divided the assets and the liabilities of the marital estate. Among the many marital assets was the marital residence in Frankfort, Indiana (the "Property") which the State Court valued at $160,000 and awarded to the Debtor. Peggy later quit-claimed her interest in the Property to the Debtor on September 26, 2007 and that deed was recorded in the Clinton County Recorder's office on October 1, 2007. The record before the Court does not reflect that Peggy took a lien on the Property in exchange for transferring it to the Debtor via quit claim deed. Nor did the State Court in the Amended Decree order that a lien be placed on the Property for Peggy's benefit in the amount of a monetary amount awarded to Peggy.

The State Court awarded Peggy assets totaling $263,255. It then equalized the division of property by taking the value of the entire marital estate ($879,223), subtracting the estate liabilities ($135,363), halving the net value (the net is $743,860 and half of that is $371,930) and computing the difference between that number ($371,930) and Peggy's award of assets ($263,255). That resulted in an monetary award to Peggy of $108,675 ($371,930 minus $263,255) (the "Equalization Award"). After providing an explanation of how it computed the Equalization Award, the State Court added:

2

> The Court finds that a Qualified Domestic Relations Order should be entered against *Mr. Evans' pension plan* requiring the amount of $108,675.00 to be paid to Mrs. Evans *from his pension plan*.  The Court finds that amount should be paid over a ten year period at the interest rate of 5% simple interest per annum in regular equal monthly installments except for the final payment.  The Court finds that that payment at that interest rate is sustainable by Mr. Evans' pension plan payments as they are made to him.  The Court further finds that payment to her in that amount over time will adequately compensate her for her 50% interest in the net marital assets of the parties.

(Emphasis added).

The Qualified Domestic Relations Order ("QDRO") was signed by the State Court on August 1, 2007 but the administrator of the Debtor's pension plan denied on the basis it failed to meet certain IRS and ERISA requirements. The State Court signed a second QDRO on July 11, 2008 but the plan administrator denied that one for the same reasons on July 22nd.

Peggy died on August 17, 2009, without a QDRO having been approved and implemented.  Peggy's estate moved to compel payment of the Equalization Award on November 5, 2009, to which the Debtor objected.  The State Court, in its well written May 27, 2010 order granting the motion (the "May 27th Order"), found that the QDRO as described and ordered in the divorce decree was "impossible to implement given ERISA and [the Debtor's] plan's parameters".  The State Court also found that

> The Court specifically made the finding that Ms. Evans was entitled to $108,675, which represented her portion of the assets.  In order to ensure that Ms. Evans would receive her entitled portion of the assets, the Court found that Mr. Evans should *pay Ms. Evans from his pension* through a QDRO.  The aforementioned facts are important because the Court made the specific finding that the $108,675 was Ms. Evans' share of the assets, and not some other sort of supplemental income such as maintenance.  The Court finds that the $108,675.00 ordered paid to Mrs. Evans by means of the QDRO is properly understood as an award to Ms. Evans from Mr. Evans' property to the extent necessary in achieving a 50-50 property division and is in the nature of a judgment against Mr. Evans in favor of Ms. Evans.  *The QDRO was only a means of achieving the property division and*

3

*paying the judgment*.

(Emphasis added).  The State Court later in the May 27th Order further noted that it was "not changing the amount that [the Debtor] has to pay to [Peggy's estate], but rather the manner in which [the Debtor] has to pay the amount".  Finally, the State Court ordered that "the parties agree to *an alternate payment plan* and in the event that the parties are unable to agree on how the payment of [the Equalization Award], plus interest, is to be made, then the parties are to return to the [State Court] for the [State Court] to make that determination" (Emphasis added).  The Debtor appealed the May 27th Order and the Court of Appeals of Indiana affirmed the State Court.  Despite the outcome of the appeal, the parties reached no resolution with respect to the payment of the Equalization Award.  Peggy's estate filed a second motion to compel payment and the Debtor filed his chapter 13 case on September 30, 2011 (the "Petition Date") before hearing on that second motion was held.

Peggy's estate filed a proof of claim in the amount of $133,328.38 ("Peggy's Claim") which represents the Equalization Award and accrued interest from the date of the Amended Decree through the Petition Date.  Peggy's estate argues that Peggy's Claim is secured by the Property and the Debtor's pension plan.  The Debtor disputes that Peggy's Claim is secured.

## *Discussion*

A proof of claim filed in accordance with the Federal Rules of Bankruptcy Procedure is prima facie evidence of the validity and amount of the claim.  Fed. R. Bankr. P. 3001(f).  A proof of claim that contains sufficient information to support it satisfies the claimant's initial burden of proof, and the burden then shifts to the objector

4

to rebut the claim. *Payne v Lampe, (In re Lampe)*, 665 F.3d 506, 514 (3rd Cir. 2011). If the prima facie validity of the claim is rebutted, the burden shifts back to the claimant to put forth sufficient evidence to support the claim. Proofs of claims with respect to secured claims in the debtor's property must be accompanied by evidence that the security interest was perfected. Fed. R. Bankr. P. 3001(d).

### *Peggy's Claim is Not Secured by the Property*

Peggy contends that Amended Decree which refers to the Equalization Award is a "judgment "and that such judgment automatically became a lien on the Property under Indiana law. The Amended Decree itself contains many findings but does *not* refer to the Equalization Award as a "judgment". The language "ordered, adjudged and decreed" does not appear in the Amended Decree. The May 27th Order did say that the Equalization Award "was in the nature of a judgment" but the fact that something is "in the nature of" something doesn't make it so. An automobile can be in the nature of a Mercedes and not be a Mercedes. If the Equalization Award was in fact a judgment, the State Court could have said so, and would not have described it as "*in the nature* of a judgment".

Giving Peggy the benefit of a doubt by construing the Amended Decree as a "judgment", the "judgment" would need to be entered and indexed in the State Court's judgment docket for it to become a lien on the Property. Ind. Code §34-55-9-2 . Nothing in Peggy's Claim nor the record in general indicates that this was done. Peggy's Claim doesn't meet the technical requirements of Fed. R. Bankr. P. 3001(d).

Nor did Peggy obtain a lien in the Property when she quit-claimed it to the Debtor on September 26, 2007. Nothing in the Quit Claim Deed indicates her reservation of lien

5

and the record here is devoid of any proof that she obtained a lien in the Property. The Court concludes that Peggy does not have a lien - judgment or otherwise - in the Property and therefore Peggy's Claim is not secured by the Property.

### *Peggy's Claim is Not Secured by the Debtor's Pension*

Peggy next argues that the Amended Decree gave her an interest in the Debtor's pension plan. From the record before the Court, the pension plan is an ERISA-qualified plan. Such plans prohibit the alienation or assignment of pension benefits and thus, a creditor, generally, cannot be granted a lien in those benefits. See, *Brown v. Pitzer*, 249 B.R. 303, 306, n. 2 (S. D. Ind. 2000). ERISA was amended by the Retirement Equity Act of 1984 which created an exception to this anti-alienation rule in domestic relations cases. The purpose of the amendment was to protect the financial security of divorcees by allowing the ERISA plan benefits to be reached. *Gendreau v. Gendreau*, 122 F.3d 815, 817 (9th Cir. 1997). The right of an ex spouse to reach pension benefits under the amendment is enforceable upon the entry of a valid "qualified domestic relations order" (QDRO) by the state court. *Brown*, 234 B.R. at 306, n. 2.

If a state court is in fact granting a spouse a right in the other spouse's pension plan, it uses a "coverture fraction" formula by which to divide pension benefits between the earning and non-earning spouses whereby the amount of the pension is multiplied by a fraction, the numerator of which is the period of time during which the marriage existed (while pension rights were accruing) and the denominator is the total period of time during which pension rights accrued. *Hardin v. Hardin*, 964 N.E.2d 247, 250 (Ind. Ct. App. 2012) (citations omitted). The resulting portion awarded to the non-earning

spouse is a percentage of the pension to which the court has determined the non earning spouse is entitled. That portion becomes that spouse's property, regardless of whether the award is paid to that spouse by the earning spouse's plan administrator or directly by the debtor. *Bush v. Taylor*, 912 F.2d 989, 994 (8th Cir. 1990) (citations omitted); *Britten v. Britten*, 227 B.R. 820, 821 (Bankr. S. D. Ind. 1997); *Bigelow v. Brown*, 168 B.R. 331, 334-335 (Bankr. N. D. Ill. 1994); *Cullen v. Cullen*, 2000 WL 381929 at *4 (Bankr. N. D. Ill.). In such cases, the debtor serves merely as a constructive trustee for the non-earning spouse's benefit, and the non-earning spouse has a claim not against the debtor, but against the pension plan. *Britten*, 227 B.R. at 821; *Gendreau*, 122 F.3d at 818. [2]

Here, the Amended Decree provides that the value of the Debtor's pension plan at that point was $373,340, but *it does not provide that Peggy is to receive a percentage of it or an interest in it,* unlike the cases cited by Peggy in support of her position. See, *Bigelow*, 168 B.R. at 332 (decree stated that former spouse was awarded 50% of the present value in the debtor's pension plan); *Cullen*, at *1 (state court, using coverture fraction, provided that husband's interest in his pension was marital property and that husband had an affirmative duty to pay 30% of it to wife); *Brown*, 249 B.R. at 305 (provided that wife was entitled to $55,770.33 *of the husband's pension funds* and the plan actually was not an ERISA qualified plan*); Gendreau*, 122 F.3d at 817 (court awarded to wife 50% interest in husband's two United Pilot's pension plans); and *Britten*,

---

[2] The fact that there may be some "disconnect " in Peggy's argument is not lost on the Court. If the Court were to have agreed with Peggy and found that she had been awarded an interest in the Debtor's pension, that portion of the pension would not have been property of the Debtor's bankruptcy estate and Peggy would have received nothing under the Debtor's chapter 13 plan. Furthermore, Peggy's Claim would have to be asserted against the Debtor's pension plan administrator, not the Debtor.

7

227 B.R at 821 (decree provided that wife was to receive one-third of husband's pension payments when they are paid to him).  Rather than using the coverture fraction formula, the Amended Decree goes into detail with respect to the value of the marital assets and liabilities and uses those calculations to arrive the Equalization Award.  The May 27th Order clearly provided that the Equalization Award represented Peggy's share of the assets (property settlement) and not maintenance (support).  The pension was merely the pool from which the Equalization Award was to be paid and the QDRO was the vehicle by which payment would be accomplished.  This fact was made clear by the May 27th Order which provided that "[t]he QDRO was only a means of achieving the property division and paying the judgment".  Had Peggy truly been awarded an interest in the Debtor's pension plan which would have been her exclusive property, she would have had the right to do whatever she wanted with that property, including transferring it to third parties.  Neither the Amended Decree nor the May 27th Order gave her this right.  Unfortunately, the plan administrator rejected the QDRO, most likely because the Amended Decree actually did not award Peggy an interest in the Debtor's pension and thus the QDRO was not necessary.  After the plan administrator rejected the QDRO a second time, the State Court in its May 27th Order directed the parties to devise an alternate method by which the Equalization Award was to be paid.  Again, had Peggy truly been awarded an interest in the pension plan, there would have been no need to devise an alternate payment method because her portion of the pension would have been her property for which she would have had redress against the plan administrator.

Furthermore, the Equalization Award was payable with interest, something that would have been incompatible with an award of a percentage of the pension.  Finally,

8

the Debtor's obligations with respect to the Equalization Award terminated on a date certain, unlike awards in pension plans that terminate upon the death of the non-earning spouse. [3] These factors collectively lead the Court to conclude that the State Court did not award Peggy an interest in the Debtor's pension but merely meant for the pension to be the source from which the Equalization Award was to be paid. When it became clear that the Equalization Award could not be paid from the pension, the State Court sought an alternate method by which it was to be paid. Accordingly, Peggy's Claim is not secured by the Debtor's pension.

Peggy's Claim is not secured by the Property or the Debtor's pension and thus, is an unsecured claim. The Debtor's objection, therefore, is SUSTAINED. Peggy's Claim is hereby ALLOWED as an unsecured claim.

When this Court initially heard this matter in March, it was the Court's understanding that post hearing briefs would be limited to (1) Debtor's objection to Peggy's claim and (2) Peggy's objection to confirmation of the Debtor's chapter 13 plan. Both of these issues arise in the Debtor's chapter 13 case. It was also the Court's understanding that there would be no significant activity in the related adversary proceeding pending the Court's disposition of these two matters in the chapter 13 case. Unfortunately, the adversary proceeding has taken an unanticipated path of its own as Peggy moved for summary judgment and the Debtor has responded and filed a summary judgment of his own. The issues raised in the summary judgment motions are

---

[3] The Indiana Court of Appeals decision, which affirmed the State Court's May 27, 2010 order, noted that .."the fact that the original dissolution decree provided for a stop date for Peggy to receive pension benefits after ten years demonstrates that the parties did not agree to equally share the risks and rewards associated with the pension". *Evans v. Evans*, 946 N.E.2d 1200, 1208, n 2 (Ind. Ct. App. 2011).

identical to the issues raised in the Debtor's objection to Peggy's claim. This order sustaining the Debtor's objection to Peggy's claim resolves the issues presented by the summary judgment motions in the related adversary proceeding and therefore those motions are moot.

### #

Distribution:

George G. Ponton, Attorney for Debtor, George Evans / James D. Moore, Attorney for the Estate of Peggy Evans / Robert A. Brothers, Chapter 13 Trustee