SO ORDERED: July 10, 2012.



Anthony J. Metz III
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| GEORGE F. EVANS ) | CASE NO. 11-12376-AJM-13 |
| ) | |
| Debtor ) | |
| ) | |

**ORDER OVERRULING CREDITOR OBJECTION TO CONFIRMATION**

This matter came before the Court on March 13, 2012 upon the objection filed by the Estate of Peggy L. Evans ("Peggy") to confirmation of the Debtor's chapter 13 plan.[1] The Court took ruling on the matter under advisement and ordered the parties to file post hearing briefs by May 14th. The Debtor has filed his brief but Peggy has filed a motion for summary judgment and a supporting memorandum in a related adversary proceeding instead of a brief in the chapter 13 case. The contested issues in

---

[1] Also before the Court is the Debtor's objection to Peggy's claim. An order sustaining that objection has been entered separately.

1

the chapter 13 case and the related adversary proceeding overlap and therefore the Court will address all of these issues.

### *Background*

The Debtor and Peggy were married. Their marriage was dissolved by decree entered by the Clinton Country Circuit Court (the "State Court"). On March 13, 2007, the State Court entered an Amended Dissolution Decree (the "Amended Decree") which divided the assets and the liabilities of the marital estate. The Debtor was awarded, in addition to other assets, the marital residence in Frankfort, Indiana (the "Real Property") which the State Court valued at $160,000. Peggy was awarded assets totaling $263,255 and also received an "equalization award" of $108,675 (the "Equalization Award"). The Court ordered that the Equalization Award be paid from the Debtor's pension but the Debtor's pension plan administrator determined that the QDRO which directed payment did not comply with ERISA and plan requirements. Peggy died on August 17, 2009 without a QDRO having been approved and implemented and without having been paid any portion of the Equalization Award.

Peggy's Estate moved to compel payment of the Equalization Award. In granting Peggy's motion, the State Court found that the QDRO as described and ordered in the Amended Decree was "impossible to implement given ERISA and [the Debtor's] plan parameters" but ordered that "the parties agree to an alternate payment plan". In the event the parties were unable to agree, they were to return to State Court for the State Court to make that determination. That order was appealed and the Indiana Court of Appeals affirmed the State Court. Peggy's Estate then filed a second motion to compel payment of the Equalization Award but the Debtor filed this chapter 13 before hearing

2

on the second motion was held.

### *The Chapter 13 Plan*

The Debtor is an above median income debtor and therefore the "applicable commitment period" with respect to his chapter 13 plan is five (5) years. The current plan under review here is the Debtor's second amended plan (the "Plan") which provides that the Debtor will pay $1467.92 for 60 months for a plan base of $88,075.20. In addition, the Debtor will pay half of his state and federal tax refunds for each year of 2011 through and including 2015. The only administrative claim is the $3500 fee claim of the Debtor's attorney. The Plan also provides that there are no arrears owed on the Real Property and that the Debtor will continue making the $1024.22 mortgage payment to Wells Fargo Mortgage.

The Debtor is paying three secured claims through the plan: (1) $864.00 at $14.40 a month for a computer system; (2) $1097.64 at $18.29 a month for a 2005 Yamaha and (3) $27,074.00 at $525.00 a month for a 2008 Sprinter[2] . The Debtor also proposes to pay a secured tax claim in the amount of $893.33 in full. The Debtor is surrendering (1) a 2008 HHR Chevrolet van; (2) leased equipment and (3) a 2006 Dodge Utility truck. According to the Debtor's amended schedules filed on December 13, 2011, the only other personal property that has not been surrendered or encumbered by liens being paid through the Plan includes (1) 2 enclosed trailers, 2000 and 2008 models, valued at $3,500; (2) a 2002 Harley Davidson MC Roadking, valued

---

[2] The Plan provided for monthly payments of $451.23 to this secured creditor, to which the creditor objected. The Debtor, secured creditor and the chapter 13 trustee resolved the objection and entered into an immaterial modification of the Plan wherein the monthly amount to be paid to this secured creditor was increased to $525.00

at $7,090; (3) a 1988 JD Tractor High Hours (sic) on engine, with a broken hydrolic pump, valued at $3,500; (4) hand tools and JD Mower valued at $950.00 but subject to a repair claim of $900; (5) a 1924 Ford which needs coils, overheats and is not running, valued at $1,500; (6) a contract for sale of a business of property that "probably is not marketable", along with 2 trucks equipment, good will and Enviro Tech lease purchase, valued at $15,000; and (7) one lot of electronic equipment (computer, fax, printer) valued at $250 (collectively, the "Unencumbered Personal Property").  The aggregate value of the Unencumbered Personal Property, after subtracting the $900 repair lien, is $30,890.

The Debtor scheduled the Equalization Award as a "judgment lien" and as a Schedule D secured claim.  The Court previously has sustained the Debtor's objection to Peggy's claim and thus it is unsecured.  As per the Debtor's Amended Summary of Schedules filed on December 13, 2011, the total scheduled unsecured claims (excluding Peggy's claim) amount to $55,552.39.  The bar date for filing claims expired on February 1, 2012 and the Court's review of the claims docket indicates that nearly all of the unsecured claimants have filed claims ($54,142.90).  If the Court's rounds up the estimated amount of unsecured claims to $55,000 for simplicity sake, Peggy's claim ($133,328.38) comprises approximately 70% of the entire unsecured claim pool. [3]

Peggy objects to confirmation of the plan because (1) the Debtor is retaining the Unencumbered Personal Property (2) the Equalization Award is secured by the Real

---

[3] Adding Peggy's claim ($133,328.38) to the existing unsecured claims ($55,000) results in a total unsecured claim pool of $188,328.38. $133,328,38 divided by $188,328.38 is .7079569, or approximately 70%.  Peggy's share of the unsecured claim pool could be slightly less, as this figure does not take into account the deficiency claims of secured creditors whose collateral has been surrendered. Nonetheless, it is safe to say that Peggy's claim makes up the lions' share of the unsecured claims pool.

Property and the Plan does not provide for treatment of Peggy's secured claim; or, in the alternative (3) the Amended Decree gave Peggy a judicial lien in the Real Property and the Plan improperly proposes (through motion to be filed separately) to avoid this judicial lien.  Peggy also alleges that the Debtor undervalued the Real Property.  Peggy alleges that these deficiencies demonstrate that the Debtor filed his chapter 13 plan in bad faith and therefore the Plan cannot be confirmed because it does not meet the confirmation criteria of §1325(a)(3).  Peggy's objections to plan confirmation concerning her "secured claim", her "judicial lien" and the undervalue of the Real Property are knocked out given the Court's determination that Peggy has only an unsecured claim because the Equalization Award is not secured by the Real Property.  The Court will address the remaining issue of whether her proposed the plan in bad faith given his retention of the Unencumbered Personal Property.

### *Discussion*

One of the prerequisites to confirmation of a chapter 13 plan is that it be "proposed in good faith and not by any means forbidden by law".  11 U.S.C. §1325(a)(3).  This "good faith" requirement in the Bankruptcy Code has remained unchanged since it was adopted in 1978.  *In re Shafer*, 393 B.R. 655, 657 (Bankr. W. D. Wis. 2008).  Early on, a "the totality of the circumstances" test was devised using five non-exhaustive factors to determine good faith: (1) does the proposed plan state the debtor's secured and unsecured debts accurately? (2) does it state the debtor's expenses accurately? (3) is the percentage of repayment of unsecured claims correct? (4) if there are or have been deficiencies in the plan, do the inaccuracies amount to an attempt to mislead the bankruptcy court? and (5) do the proposed payments indicate a

fundamental fairness in dealing with one's creditors? *In re Rimgale*, 667 F.2d 426, 432-33 (7th Cir. 1982). With respect to the fifth factor, the timing of the bankruptcy filing and the proportion of the total unsecured debt that is owed to the objecting creditor was relevant. *Id*. at n 22. All in all, the focus was "whether or not under case circumstances there has been an abuse of Chapter 13's provisions, purpose or spirit. *Id*. at 433.

As the "totality of the circumstances" test evolved, courts began considering "why the debtor filed under chapter 13, how the debts arose, and whether those debts would be nondischargeable in a chapter 7" as part of the fifth *Rimgale* factor of "fundamental fairness". *In re Smith*, 848 F.2d 813, 818 (7th Cir. 1988). Yet, the touchstone of the good faith analysis under §1325(a)(3) remained "whether the plan could be said to be a sincere effort at repayment, or was instead an effort to thwart repayment". *In re Schaitz*, 913 F.2d 452, 453 (7th Cir. 1990). *Rimgale's* "totality of the circumstances" test still applies, and it is telling that four of the five *Rimgale* factors deal with the accuracy of the debtor's schedules, and not the debtor's pre petition conduct or how the debt held by the objecting creditor arose. Shafer, 393 B.R. at 657. [4]

---

[4] Such factors are more relevant as to whether the debtor filed his case in good faith. Prior to the enactment of BAPCPA (the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005), a debtor's lack of good faith with respect to the filing of the bankruptcy case was a judicially created cause for dismissal under §1307. The seminal case of *In re Love*, 957 F.2d 1350 (7th Cir. 1992) distinguished between the lack of good faith in proposal of the plan under §1325(a)(3) and the lack of good faith in the filing of the petition as a cause for dismissal under §1307. *Love's* non-exhaustive list of factors to be considered under the "totality of the circumstances" test with respect to dismissal for cause due to bad faith filing of the case included (1) the nature of the debt, including whether it would be nondishchargeable in a chapter 7; (2) the timing of the filing of the petition; (3) how the debt arose; (4) the debtor's motive in filing the petition; (5) how the debtor's actions affected creditors; (6) the debtor's treatment of creditor both pre and post petition ; (7) whether the debtor has been forthcoming with the bankruptcy court and the creditors. *Love*, 957 F.2d at 1357; *Shafer*, 393 B.R at 658-59. BAPCPA added §1325(a)(7) which made the good faith filing of a petition a prerequisite for confirmation. It appears that lack of good faith in filing the petition likewise remains a "cause" for dismissal under §1307. Here, Peggy argues bad faith only with respect to the proposal of the plan under §1325(a)(3).

6

Peggy makes no allegation that the Plan (1) fails to list accurately the Debtor's assets or liabilities or (2) fails to state accurately the Debtor's secured and unsecured debts. Peggy does not argue that the Debtor's Schedule I fails to include all sources of income or that the expenses listed in Schedule J are inaccurate or unreasonable. The Plan gives no specific percentage of distribution to allowed unsecured claims, but the Debtor's Amended Schedules I and J filed on December 13, 2011 indicate monthly income and expenses of $4717.68 and $3393.67 respectively, for monthly net income of $1324.01. The Debtor proposes to pay $1467.92 for 60 months for a plan base of $88,075.20, and that number is sure to increase as the Debtor also will be submitting half of his state and federal tax refunds for the duration of the Plan. The value of the Unencumbered Personal Property is less than what is being paid out under the Plan and the Plan appears to meet the §1325(a)(4) confirmation requirement that unsecured creditors, of which Peggy is one, receive not less than what they would receive under a chapter liquidation. The Court concludes that the Plan evidences a sincere effort at repayment and an intent on the part of the Debtor to pay and deal fairly with his creditors. See, *In re Spruch*, 410 B.R. 839, 844 (Bankr. S. D. Ind. 2008) (plan proposed in good faith where debtors were paying all of monthly net income into the plan, despite a 0% distribution to unsecured creditors). [5] Accordingly, Peggy's objection is overruled,

---

[5] Even had Peggy objected to confirmation under §1325(a)(7) and argued that the case was not filed in good faith, the Court still would have found in the Debtor's favor. Peggy's claim arose by order of the State Court and the Amended Decree as an attempt to equalize the property settlement among the Debtor and Peggy, not by an "egregious" act committed by the Debtor. Peggy's claim is not secured and is in the nature of property settlement, thus, it is a general unsecured and dischargeable claim in the chapter 13 case under §1328(a)(2). It *would* be a nondischargeable debt in a chapter 7 under §523(a)(15) but it would still be unsecured. The Debtor filed his chapter 13 petition after his unsuccessful appeal of the State Court's May 27, 2010 order and his motive for the filing was not as much to deny Peggy her claim but to clarify that it is not secured by the Real Property or his pension. There is nothing in the record to suggest that the Debtor has not been forthcoming with the bankruptcy court and the creditors. Thus,

and the Debtor's plan may be confirmed.

# # #

Distribution:

George G. Ponton, Attorney for Debtor, George Evans / James D. Moore, Attorney for the Estate of Peggy Evans / Robert A. Brothers, Chapter 13 Trustee

---

even, examining the filing of the chapter 13 case, the Court, from the record presently before, it, concludes that the petition was filed in good faith and thus, meets the requirements of §1325(a)(7).